■ Joseph T. Norris, Appellant, v Jamie F. Menard et al., Respondents. [23 NYS3d 672]—

Egan Jr., J. Appeal from an order of the Supreme Court (Ellis, J.), entered September 8, 2014 in Clinton County, which denied plaintiff's motion for summary judgment on the issue of liability.

At approximately 12:00 p.m. on the afternoon of Saturday, January 15, 2011, defendant Jamie F. Menard, a refrigeration technician, drove the Ford Econoline van owned by his employer, defendant L. Bombardier and Sons, Inc., to an ice fishing tournament being held on Lake Champlain near the Village of Rouses Point, Clinton County. A group of friends had a fishing shanty set up on Kings Bay, where plaintiff, with whom Menard "[had] been best friends since [they] were four" years old, was cooking cheeseburgers and fish. Menard remained in or around the shanty until roughly 4:00 p.m. and, during that four-hour period, consumed four beers and a quantity of food.

Around 4:00 p.m., plaintiff and Menard left the tournament in separate vehicles and drove to The Last Resort bar at Barcombs Marina for a weigh-in of the fish that had been caught that day. While en route, Menard stopped at his residence to take a pain pill that had been prescribed for him due to a prior injury to his right knee. Menard then proceeded

---

to the marina (still driving his employer's van), where he helped the owner of the marina carry in platters of food; while there, Menard got something to eat and consumed a Captain Morgan and 7-Up mixed drink. While there, Menard received a phone call at approximately 6:00 p.m. from his brother-in-law, who indicated that the heat was out at his house and requested Menard's assistance. Plaintiff offered to go along for the ride, and the two headed in the van to the brother-in-law's residence located on State Route 11 in Ellenburg Depot, Clinton County.

According to both plaintiff and Menard, it was lightly snowing as they began their trip; as the trip progressed—and as they gained elevation—the weather worsened. By the time that the pair arrived at their destination, approximately six inches of snow had accumulated on the roadway. Plaintiff and Menard remained at the brother-in-law's home for roughly 30 minutes, during which time it continued to snow. As they were leaving, plaintiff mentioned that his friend, who lived in nearby Lyon Mountain, had a spare refrigerator that was not working and asked Menard if he had time to take a look at it. Menard agreed, and he and plaintiff then set out for Lyon Mountain— turning onto Bradley Pond Road at approximately 7:15 p.m.

Plaintiff and Menard each testified that the portion of Bradley Pond Road they traveled that day consisted of a series of sharp, 90-degree turns with short sections of straightaways in between. By all accounts, Menard negotiated the first three curves without incident. Although the posted speed limit was 55 miles per hour, Menard testified that he approached each curve at approximately 15 miles per hour and traveled the intervening straightaways between 25 and 30 miles per hour. Due to the amount of accumulated snow, Menard was following existing tire tracks located near the center of the roadway. As Menard came out of the fourth curve, the tire tracks disappeared and Menard felt the wheels on the van begin to slip. Although Menard attempted to steer to the left, the vehicle would not respond, and the van slid sideways toward the right shoulder. Once the van reached that point, Menard lost control, and the van slid down an embankment, striking a tree and shattering the passenger-side window. Plaintiff apparently raised his hand to shield his face and, as the van continued forward, plaintiff's arm exited the vehicle. The vehicle then struck a second tree and came to rest—pinning plaintiff's right arm between the van and the tree. Emergency personnel extricated plaintiff from the van and transported him to, first, a hospital in the City of Plattsburgh, Clinton County and then to a hospital near Burlington, Vermont where, the next day,

plaintiff's arm was amputated above the elbow. As a result of this incident, Menard was charged with various violations of the Vehicle and Traffic Law, and he ultimately pleaded guilty to driving while ability impaired by drugs (*see* Vehicle and Traffic Law § 1192 [4])[1] and speed not prudent for the conditions (*see* Vehicle and Traffic Law § 1180 [e]).

Plaintiff thereafter commenced this action against defendants seeking to recover for injuries sustained in the accident. Following joinder of issue and discovery, plaintiff moved for summary judgment on the issue of liability. Supreme Court denied plaintiff's motion—finding questions of fact as to proximate cause—and this appeal by plaintiff ensued.

Upon reviewing the record, we find that Supreme Court should have granted plaintiff's motion for summary judgment on the issue of liability. Plaintiff made a prima facie showing of his entitlement to judgment as a matter of law by submitting evidence that this was a single-vehicle accident that occurred when Menard lost control of the van he was driving on a snowy road, that plaintiff was a passenger in the van, that Menard admitted consuming numerous alcoholic drinks and taking a prescription pain pill in the hours before the accident, that Menard smelled of alcohol and had bloodshot eyes at the scene, that a State Police laboratory analysis of Menard's blood drawn on the evening of the accident revealed the presence of alcohol, hydrocodone and THC and, finally, that Menard pleaded guilty to violating Vehicle and Traffic Law §§ 1180 (e) and 1192 (4) in conjunction with the accident. In our view, this evidence established a prima facie case of negligence that, in turn, was the proximate cause of the accident.[2] In opposition, defendants failed to offer a nonnegligent explanation for the accident, allege that plaintiff contributed in any way to the happening of the accident or otherwise raise any triable issue of fact in this regard. Accordingly, plaintiff was entitled to summary judgment on the issue of liability.

Peters, P.J., McCarthy, Devine and Clark, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion granted and summary judgment awarded to plaintiff on the issue of liability.

---

1. Menard's blood was drawn at a local hospital at approximately 10:00 p.m. on the evening of the accident, at which time he had a blood alcohol level of .06% and tested positive for THC and hydrocodone.

2. Even if we were to agree (and we do not) that Menard's plea to the Vehicle and Traffic Law violations did not preclude the potential existence of questions of fact relative to proximate cause because Menard apparently entered an *Alford* plea, there was sufficient other evidence to demonstrate plaintiff's prima facie entitlement to summary judgment on the issue of liability, a showing that defendants did not rebut.